UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:14-CV-335-F

| | | |
|---|---|---|
| JUDY WAERNESS, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| ALLSCRIPTS HEALTHCARE US, LP, | ) | |
| Defendant. | ) | |

This matter is before the court on Defendant Allscripts Healthcare US, LP's ("Defendant") Motion to Dismiss [DE-13]. Plaintiff Judy Waerness ("Plaintiff") filed a response, [DE-19], to which Defendant filed a reply [DE-20]. Defendant also filed a Notice of Subsequently Decided Authority [DE-22]. This matter is ripe for disposition. For the reasons more fully stated below, the Motion to Dismiss is ALLOWED.

## I. STATEMENT OF THE CASE

Plaintiff commenced this action on May 5, 2014 in Wake County Superior Court, North Carolina, asserting a claim under the North Carolina Wage and Hour Act, as well as common law claims for breach of contract and fraud. Compl. [DE-1-3]. On June 11, 2014, Defendant removed the case to this court [DE-1].

Since 2005, Defendant has employed Plaintiff as an Inside Sales Executive ("ISE"). Compl. [DE-1-3] ¶ 4. In that capacity, she "sells Defendant's software offerings and peripherals, additional hardware and third-party software licenses and products to all existing clients." *Id.* ¶ 5. Plaintiff earns an annual base salary with the possibility of additional compensation through Defendant's sales incentives plan, outlined in three documents entitled "Compensation Plan,"

"Deal Process and Sales and Incentive Order Crediting," and "Rules of Engagement" (collectively, "the Plan"). *Id.* ¶¶ 6-7. The dispute in this case centers on a valuable sale of Defendant's products to Medical Services of America ("Medical Services"). *Id.* ¶¶ 16-29. Plaintiff alleges that Defendant unfairly excluded her from participating in the Medical Services sale in order to prevent her from earning her rightful commission under the Plan. *Id.* ¶ 23. She argues that although Defendant ultimately paid her $39,100 in commission for the sale, this amount was far below what was owed her under the Plan. *Id.* ¶¶ 27-28. Plaintiff contends that this alleged act violates the North Carolina Wage and Hour Act and amounts to a breach of contract and fraud. *Id.* ¶¶ 30-47.

In the instant motion, Defendant argues, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, that Plaintiff has failed to state any claim upon which relief can be granted. Mem. in Support of Def.'s Mot. to Dismiss [DE-14] at 1. It also maintains that Plaintiff has failed to comply with Rule 9's heightened pleading standard for fraud claims. *Id.*

## II. ANALYSIS

### A. Legal Standard

Rule 12(b)(6) permits a court to dismiss an action for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To state a claim, a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To adequately allege fraud, however, Rule 9(b) requires "a party [to] state with particularity the circumstances constituting fraud . . . ." To meet Rule 9's heightened pleading standard, a plaintiff must plead the "time, place, and contents of the alleged fraudulent representation, as well as the identity of each person making the misrepresentation and what was

2

obtained thereby." *Liner v. DiCresce*, 905 F. Supp. 280, 287 (M.D.N.C. 1994) (internal quotation omitted).

A 12(b)(6) motion should only be granted if "it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief." *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999). However, a complaint that proffers only "a formulaic recitation of the elements of a cause of action" with no "further factual enhancement" is insufficient. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 557 (2007). To survive dismissal, a party must come forward with "enough facts to state a claim to relief that is plausible on its face." *Id.* at 548. The plausibility standard is met "when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). The court must accept as true all well-pleaded allegations and must draw all reasonable factual inferences in favor of the plaintiff. *See Venkatraman v. REI Sys., Inc.*, 417 F.3d 418, 420 (4th Cir. 2005); *Myan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993).

Pursuant to Fed. R. Civ. P. 10(c), documents attached to a complaint are considered part of the complaint. *See Phillips v. Pitt Cnty. Mem'l Hosp*, 572 F.3d 176, 180 (4th Cir. 2009). Accordingly, in deciding the instant motion, the court will consider the documents constituting the Compensation Plan that Plaintiff attached to her complaint. Compl. Ex. A-C [DE-1-3] at 11-38.[1]

---

[1] Citation to the exhibits attached to the complaint is to the page numbers assigned by the court's electronic filing system.

### B. North Carolina Wage and Hour Act and Breach of Contract Claims

The North Carolina Wage and Hour Act ("NCWHA") provides, "Every employer shall pay every employee all wages and tips accruing to the employee on the regular payday." N.C. Gen. Stat. § 95-25.6. Plaintiff alleges that "Defendant's failure to pay [Plaintiff] her full and appropriate commission under the Plan for the Medical Services sale . . . constitutes a violation of [the NCWHA]." Compl. [DE-1-3] ¶ 34. Defendant argues that Plaintiff's NCWHA claim merits dismissal because, under Illinois law, the Plan does not entitle Plaintiff to additional bonus compensation. Mem. in Support of Def.'s Mot. to Dismiss [DE-14] at 5-10. Plaintiff disputes this contention and further argues that "North Carolina law unquestionably governs Plaintiff's wage and hour claim." Pl.'s Opp. to Mot. to Dismiss [DE-19] at 5.

The parties unambiguously agreed that Illinois law would govern interpretation of the Plan's terms. The agreement states, "The terms of this Plan shall be governed by and interpreted under and administered in accordance with the laws of the State of Illinois." Compl. Ex. A [DE 1-3] at 19. In North Carolina, it is proper for courts to give effect to parties' choice of law agreements as long as the parties had a reasonable basis for their choice. *See Tanglewood Land Co., Inc. v. Byrd*, 261 S.E.2d 655, 656 (N.C. 1980); *Behr v. Behr*, 266 S.E.2d 393, 395 (N.C. Ct. App. 1980). Because Defendant's principal place of business is in Illinois, [DE-1] ¶ 3b, the parties' choice was reasonable. *See Mosteller Mansion, LLC v. Mactec Eng'g & Consulting of Georgia, Inc.*, No. COA07-664, 661 S.E.2d 788, at *4 (N.C. Ct. App. May 20, 2008) (unpublished).

Although Illinois law governs the interpretation of the Plan's terms, Plaintiff may still bring a North Carolina statutory wage claim. In *Vertex Surgical, Inc. v. Paradigm Biodevices, Inc.*, No. 09-1934, 390 F. App'x 1 (1st Cir. Aug. 4, 2010) (unpublished), the First Circuit Court

4

of Appeals found that the plaintiff could bring a statutory claim under Georgia law despite the parties' agreement that Massachusetts law would apply to the interpretation of the agreement's terms. Justice Souter, sitting by designation, wrote, "Matters apart from construing 'terms' [of the agreement] are ostensibly left alone, including any choice of law issue about the applicability of post-breach statutory obligations imposed by a state other than Massachusetts having an interest in the contractual relationship of [the parties]." *Id.* at *2.

Similar to *Vertex*, the parties' choice of law provision here does not preclude Plaintiff's NCWHA claim. However, while the NCWHA provides Plaintiff a cause of action to recover unpaid wages, Illinois law will govern whether Defendant owes Plaintiff unpaid wages under the terms of the Plan. This analysis turns on whether the Plan amounts to an enforceable contract and, if so, whether Defendant breached the Plan's terms. Accordingly, the court will analyze Plaintiff's NCWHA and breach of contract claims simultaneously.

The Plan sets out quarterly sales quotas and "incentive payouts" based on the ISE's sales performance. Compl. Ex. A [DE-1-3] at 13. It also sets rules for how sales orders are to be credited to ISEs and what incentive credit ISEs will receive for "upgrade deals" and sales to "Strategic Accounts." *Id.* ¶¶ 12-15. The Plan, however, contains several disclaimers. The front page of the Plan states, "This Compensation Plan is subject to change without notice." Compl. Ex. A [DE-1-3] at 12. It further states, "The language used in this Plan is not intended to create, nor is it construed as an employment contract for any defined period of time." *Id.* at 19. The Plan specifies that "[it] is subject to modification, amendment and/or termination by the Company at its sole discretion." *Id.* at 18. It continues, "The Company has the exclusive right to administer and interpret this Plan and has full discretion with regard to the amount of any sales incentives awarded and circumstances under which sales incentives are awarded." *Id.*

5

Plaintiff alleges that under the Plan's terms she is entitled to a $136,000 commission on the Medical Services sale. *Id.* ¶ 24. She states that approximately one month after the deal closed, her supervisor notified her that Defendant had placed a cap on the Medical Services sale commission. *Id.* ¶ 26. Plaintiff argues this limitation violated the Plan's terms. *Id.* Although Defendant eventually paid her $39,100 in commission on the sale, she argues that this was the result of "an arbitrary and vague formula" that Defendant created *ex post facto* in order to "intentionally miscalculate[] [her] commission under the Plan." *Id.* ¶¶ 27, 29.

To show she is entitled to the commission at issue, Plaintiff must establish that the Plan amounted to an enforceable contract. *See Rakos v. Skytel Corp.*, 954 F. Supp. 1234, 1237 (N.D. Ill. 1996). She must show that "(1) the [Plan contains] language clear enough that [she] would reasonably believe that an offer had been made; (2) the [Plan was] disseminated to the [her] in such a manner that the [she was] aware of its contents and reasonably believe[d] it to be an offer; and (3) [she] accept[ed] the offer by commencing or continuing work." *Id.*

In *Maxwell v. Vertical Networks, Inc.*, No. 03 C 5715, 2005 WL 950634, at *5-6 (N.D. Ill. Mar. 18, 2005), the court found that there was no enforceable contract where an incentive compensation plan contained disclaimers substantially similar to those in this case. The court stated that "where an employer retains the right to make unilateral modifications to the plan at any time, there can be no reasonable belief that an offer was made with regard to the incentive compensation." *Id.* at *6. The court in *Rakos* came to the same conclusion, stating:

> The Plan . . . did not create an enforceable contract as a matter of law because it did not contain a clear right to bonus commissions. Defendant clearly retained the right to modify or cancel the Plan at any time without prior notice. Such a statement is an effective disclaimer to negate any possible promissory intent.

954 F. Supp at 1237.

6

The terms of the Plan make it sufficiently clear that, as a matter of law, Plaintiff has no contractual right to the bonus commission at issue. The Plan vests Defendant with such broad discretion that Plaintiff could not have reasonably believed that it constituted an offer or that its terms provided her with enforceable rights to the bonus commission.[2]

Plaintiff also argues that Defendant exercised its discretion in such an arbitrary and capricious manner that it amounted to a violation of the inherent duty of good faith and fair dealing. Pl.'s Opp. to Mot. to Dismiss [DE-19] at 9. She contends that the Plan's terms created a reasonable expectation that she would be entitled to the bonus commission. *Id.* In *Rakos*, the court dismissed the same argument. 954 F. Supp. at 1240. It held that where the plaintiff knew that his employer could exercise discretion under the agreement's terms, the employer's decision to pay a smaller commission than the agreement called for "did not diverge from the expectations of the parties, [and] therefore there was no breach of the covenant of good faith." *Id.* Similarly, Plaintiff here was well aware that Defendant possessed discretionary authority under the Plan to decrease the amount of the bonus commission. Defendant's choice to deviate from the Plan's terms cannot be said to diverge from the parties' reasonable expectations.

Because, as a matter of law, the Plan does not constitute an enforceable contract between the parties, Plaintiff cannot maintain her breach of contract action. Further, because the Plan does not entitle Plaintiff to the bonus commission she seeks, her NCWHA claim must be dismissed.

---

[2] The court's conclusion would be no different if it analyzed Plaintiff's claim under North Carolina law. *See McCabe v. Abbott Labs., Inc.*, No. 5:13-CV-125-D, 2014 WL 4685184, at *6 (E.D.N.C. Sept. 19, 2014) (finding that, under North Carolina law, documents detailing criteria for sales incentive compensation did not constitute a binding contract where the employer retained full discretion to determine bonus awards).

### C. Fraud Claim

Plaintiff's fraud claim centers on her allegation that Defendant ratified and condoned the actions of her coworker which were designed to exclude her from participating in the Medical Services sale and prevent her from receiving a sales commission under the Plan. Compl. [DE-1-3] ¶¶ 23, 42-47. She suggests that her involvement in a prior sale to Medical Services entitled her to participation in the subsequent Medical Services deal. *Id.* ¶¶ 17-29. Plaintiff also contends that Defendant committed fraud when it "wrongfully reduce[d] [her] commissions (after such commissions were earned) by vaguely and arbitrarily attempting to change the Plan" and when it "fail[ed] to follow through on its promise to follow the terms of the Plan even though [it] had no intention to follow the Plan." *Id.* ¶ 43.

To avoid dismissal of her fraud claim, Plaintiff must allege with particularity the following elements: "(1) False representation or concealment of a material fact, (2) reasonably calculated to deceive, (3) made with intent to deceive, (4) which does in fact deceive, (5) resulting in damage to the injured party." *Terry v. Terry*, 273 S.E.2d 674, 677 (N.C. 1981) (internal quotation omitted).

Plaintiff has failed to allege with particularity that she was in fact deceived. Although she alleges that a coworker attempted to hide the Medical Sales deal from her, she notes that in July 2013 she "first became aware that [the company] had been working on a deal with Medical Services." Compl. [DE-1-3] ¶ 18. This occurred at least one month before the deal closed. *Id.* ¶ 24. At best, Plaintiff has alleged that Defendant concealed a fact calculated and intended to deceive her. However, more is needed. Because she discovered the truth at least one month before the sale was completed, she cannot allege that she was in fact deceived. *Cf. Hudson-Cole Dev. Corp. v. Beemer*, 511 S.E.2d 309, 313 (N.C. Ct. App. 1999) ("[W]hen the party relying on

8

the false or misleading representation could have discovered the truth upon inquiry, the complaint must allege that he was denied the opportunity to investigate or that he could not have learned the true facts by exercise of reasonable diligence.").

Even assuming Plaintiff was in fact deceived, she has failed to allege with particularity that such deception resulted in any damages. She notes that she ultimately received a $39,100 commission for the Medical Services sale. Compl. [DE-1-3] ¶ 27. The Complaint is devoid of any allegation that Plaintiff's late entry into the deal caused Defendant to decrease her commission. Instead, she alleges that after the deal closed, Defendant "placed a cap on the total commission to be paid for the Medical Services sale." *Id.* ¶ 26. At most, Plaintiff alleges that the $39,100 award was the result of Defendant's exercise of discretion under the Plan to determine the award, *not* the result of Plaintiff's limited participation in the deal. Accordingly, Plaintiff has failed to adequately state a claim for fraud.

Further, the court finds unavailing Plaintiff's claim that Defendant committed fraud when it diverged from the Plan's terms. As noted above, the Plan explicitly stated that Defendant has "full discretion with regard to the amount of any sales incentives awarded . . . ." Compl. Ex. A [DE-1-3] at 18. Plaintiff had no reasonable basis to construe the terms of the Plan as a promise to award any certain amount of bonus commission. Because the Plan does not amount to a false representation which was intended to deceive her, Plaintiff cannot maintain her fraud action.

9

## III. CONCLUSION

Based on the foregoing, Defendant's Motion to Dismiss [DE-13] is ALLOWED. The Clerk of Court is DIRECTED to close this case.

SO ORDERED. This the 4th day of February, 2015.

*James C. Fox*
James C. Fox.
Senior United States District Judge

10